# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5793 | **DATE** | 11/12/2004 |
| **CASE TITLE** | U.S.A. ex rel Robert Ellis vs. Steven C. Bryant | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the Section 2254 petition for writ of habeas corpus brought by Petitioner Robert Ellis. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | Document Number |
| | Notified counsel by telephone. | NOV 12 2004 | |
| ✓ | Docketing to mail notices. | date docketed | 26 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |

| | | | |
|---|---|---|---|
| TSA | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

U.S. DISTRICT COURT

2004 NOV 12 PM 0: 57

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA ex.    )
rel. ROBERT ELLIS,    )
   )
      Petitioner,    )
   ) No. 00 C 5793
      v.    )
   ) Wayne R. Andersen
STEVEN C. BRYANT    ) District Judge
   )
      Respondent.    )
   )

DOCKETED

NOV 1 8 2004

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the petition of Robert Ellis for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

### BACKGROUND

Petitioner does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his arson conviction. *People v. Ellis*, No. 1-98-0514 (Ill.App.First Dist. 1999). For purposes of federal habeas review, "a determination of a factual issue made by a *State* court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we will adopt the facts as our own.

Following a bench trial in Cook County, Illinois, Petitioner and co-defendant Craig Smith were convicted of arson and sentenced to a 3-year term of imprisonment. The indictment alleged that defendants knowingly, by means of fire, damaged the building located at 6043 South Aberdeen, with the intent to defraud Allstate Insurance Company ("Allstate").

After numerous continuances, a bench trial commenced on September 9, 1997, with Smith being represented by counsel and Petitioner proceeding pro se. The State called Michael

26

Lee, an employee of an investigation firm who investigated the property at 6043 South Aberdeen for Allstate. The parties stipulated that Lee is an expert in the field of fire investigations and is qualified to render an expert opinion. Upon arriving at the property on January 7, 1992, Lee observed a wood frame structure containing two residences, a front apartment and a rear apartment. The greatest damage was to the rear apartment. Lee noticed a liquid pour pattern on the floor of the bedroom in the rear apartment, which indicated that a flammable or combustible liquid had been poured on the floor, ignited, and burned. Lee opined that the fire originated inside the rear apartment and started by an open flame being applied to a flammable liquid that had been poured throughout the apartment.

Victoria Jones testified that she and Gino Nicholson lived in the rear apartment of the property from November 1990 to December 1991. Two other tenants lived in the front apartment. Jones paid rent to Craig Smith. She stated that in April 1991, Smith came to the property and told Jones, Nicholson, and the other two tenants that he sold the property to Petitioner and they would probably have to move. Smith told them that he wanted them to move because he had fire insurance on the property.

A few days after this conversation, Smith and Petitioner came to the property and spoke with Jones, Nicholson, and the other two tenants, again telling them that they had to move. Smith stated that he had fire insurance on the property and he told them they could obtain fire insurance and they "could make money together." Petitioner stood next to Smith during this conversation. Petitioner stated that the tenants had a certain time to move out and he could locate them to another building. Jones stated that they were current with their rent at the time.

After these conversations in April, the electricity and gas service were interrupted several

times. Jones stated that between April and the time she moved out on December 19 or 20, 1991, the electricity was cut off approximately 50 times. The gas was turned off between 10 and 15 times. Each time these services were interrupted, she notified the utilities and they were turned back on. Jones saw people around the house who cut the wires. On one occasion, she called the police and they found two men in the basement. Jones believed they had a key because the locks were not broken.

In October of 1991, Smith and Petitioner had another conversation with the tenants. Smith told them that they had to move out by December 20, 1991. He again stated that this was because they had fire insurance. He told them that if they saw anything happening at the house next door, not to say anything. He again told them that they could get fire insurance and they "could make money together." Petitioner was present when Smith made that statement. Smith also told them that the building was going to go up in flames.

On cross examination, Jones denied damaging the property and stated that she did not return to the property after she left on December 19th or 20th. Petitioner asked her why she did not call the police if Smith told her he was going to burn the building. She stated that she did not really believe Smith was going to burn the building. She moved because Smith asked her to move and because the gas and electricity were being cut off.

On September 24, 1997, the trial resumed and John Conway, an adjuster for Allstate, testified that he was assigned to the fire loss that occurred at 6043 South Aberdeen on December 24, 1991. The insured, Petitioner, made the claim on December 26. Conway and an adjuster hired by Petitioner, went to the property on January 2, 1992. Conway stated that the back of the two-unit frame building on the property was burned and appeared vacant. The front apartment

3

had broken glass and smoke damage. Conway noticed that the furnace and hot water heater were missing from the property. After obtaining a title search, Conway learned that Smith was the prior owner and there was a mortgage on the property.

Conway hired George Callas, who appraised the property to have a market value prior to the fire of $31,000. The property was insured for $70,000 and Petitioner' application for insurance indicated a purchase price of $65,000. According to Conway, it would take about $53,525 to repair the building to the condition it was in before the fire. Petitioner submitted a claim for $70,000.

Charles Johnson testified that on December 24, 1991, he lived at 6029 South Aberdeen. He was familiar with the building at 6043 South Aberdeen and knew the people who lived there. He believed that Smith owned the building. Johnson met Smith when Johnson cleaned the vacant lot next to the property for Smith.

Johnson testified that he saw Smith at the building on December 24, 1991, at 6 a.m., as Johnson walked down Aberdeen to purchase a newspaper. As Johnson approached 6043 South Aberdeen, he saw Smith enter the front gate of the property and walk around toward the back of the building. This is the same side of the building where the entrance to the rear apartment was located. After Johnson purchased his newspaper, he passed the property again on his way home. Johnson then saw Smith leaving through the back entrance of the property and entering a van parked in the alley. Johnson continued walking to his home. Johnson thereafter learned that the building at 6043 South Aberdeen was on fire. He looked and saw flames coming from the side and back of the building. About ten minutes had passed from the time he saw Smith leave in the van.

4

Johnson testified that he was incarcerated at the time of trial because he had pled guilty to burglary in August 1997. Johnson admitted that he had other felony convictions for theft, burglary, and possession of a controlled substance.

The parties stipulated that, if Robert Boese were called to testify, he is an expert in the field of forensic chemistry and would be qualified to render an expert opinion in that field. The parties stipulated that Mr. Boese would testify that on January 8, 1992, he received two samples taken from the bedroom in the rear apartment at 6043 South Aberdeen. Bosse found the samples to contain the remnant portion of a wide boiling range mixture of hydrocarbon compounds whose chromatographic representation is consistent with the chromatograms developed from petroleum-based products such as lantern fuels and automotive gasoline.

The parties stipulated to the admission of various documents: (1) a trust agreement from Maywood Proviso State Bank dated March 13, 1986, between the bank and Smith, transferring Smith's interest in the property to the trust; (2) a mortgage instrument for the trust dated March 27, 1990, which is a mortgage given to Chrysler First Financial Services Corporation in the amount of $55,272.51 to secure a note in that amount; (3) a mortgage document securing another note from First Chrysler for $26,584.33 relating to the property at 6043 South Aberdeen and the property at 12222 South Normal; (4) a trustee's deed conveying the property from the Proviso Bank back to Smith dated April 2, 1990; (5) a contract for the sale of the property from Smith to Petitioner with a purchase price of $35,000; and (6) a quitclaim deed from Smith to Petitioner dated April 1, 1991.

After the State rested, defendants moved for directed findings in their favor. The trial court denied the motions as to the charge of arson with intent to defraud an insurer and the matter

5

was continued until October 8, 1997.

On October 8, 1997, the defense moved to call additional witnesses other than those listed in discovery. The State objected, arguing that the request was prejudicial and unfair. The defense sought to introduce the testimony of witnesses who allegedly would contradict Johnson's testimony. The State contended that the defendants had made no attempts to interview Johnson despite the fact that he was available and in the penitentiary. The trial court denied defendants' motion.

Precious House, a friend of co-defendant Smith, testified that on December 23, 1991, he went to Smith's home and did not leave until 11 a.m. the next morning. He stated that he might have dozed off for about ten minutes or so, but otherwise he was awake and knew that Smith was also present in the home the entire time. Harvey Johnson testified that he was also at Smith's home on December 23, 1991. He arrived about 10 p.m., watched movies, and fell asleep. When he awoke at about 6 o'clock in the morning, Smith was present and he did not see Smith leave the residence. Benita Smith, Smith's wife, testified that on December 23, 1991, she left for work between 10 and 10:30 p.m. She returned the next morning between 7 and 7:30 a.m. and Smith was present at that time.

Smith testified that he purchased the property at 6043 South Aberdeen in 1986 and owned it until 1991. In March of 1991, he sold the property to Petitioner under a contract for $35,000. Smith stated that the contract was actually for $60,000, but $35,000 was the mortgage balance that Petitioner assumed. Smith stated that prior to the sale, he managed the building and the tenants did not pay their rent consistently. After Smith sold the building in April 1991, he did not go to the property. Smith denied telling the tenants to get insurance because he was going to set

fire to the building. Smith admitted that he told the tenants to move, but this was because they were not paying their rent.

Smith denied being at the property on December 24, 1991. He stated that he was at his home hosting a party. He stated that he did not stand to gain anything if insurance proceeds were paid on this property. Petitioner had made payments of approximately $5,000 on the contract. He admitted that Petitioner owed him additional money, but he did not attempt to collect after the fire because Petitioner told Smith that he would not be able to make the payments until he could get the building fixed.

Smith stated that he paid $15,000 for the property in 1985. He received a mortgage for $55,272. He stated this was on the Aberdeen property and on his home. In April 1990, Smith obtained a second mortgage on his home. The State pointed out, however, that the documents indicated that the mortgage for $55,272 was on the Aberdeen property and the 1990 mortgage for $26,584 was on the Aberdeen property and his home at 12222 South Normal. In 1991, Smith still owed about $50,000 on the first mortgage. Smith stated that he took a note from Petitioner for $35,000, but that was in addition to what was owed on the property which was about $30,000. Smith claimed there was a separate contract for the additional amount, but they did not record it, and Smith could not find it. Smith never asked Petitioner to sign an assumption agreement assuming the mortgage. Smith stated that the mortgage company did not ask him to do so.

Smith admitted going to the building and telling the tenants that Petitioner owned the building. Smith also identified his bankruptcy petition filed in December 1992, indicating that he had about $377,000 of outstanding debt. On re-cross examination, Smith admitted that he

7

collected on two prior claims with Allstate for fire losses at two different properties. In both instances, he had mortgages.

Petitioner testified that he began collecting rent at 6043 South Aberdeen shortly after entering the contract for sale with Smith, which was around April or May of 1991. Petitioner had difficulty collecting rent from the tenants. He did not know when the tenants moved out, but stated that it was probably a few days prior to December 21, 1991, because he went to the property on that day and discovered it vacant. Petitioner stated that the doors and windows were kicked in and there were holes in the property and other damage. Petitioner stated that he had served the tenants with notices about their rent on several occasions. On the last occasion Petitioner spoke to them, he told them to move because they were not paying their rent. In December 1991, the tenants were at least two months behind on the rent. Petitioner stated that Smith had nothing to do with the building after April 1, 1991. Petitioner denied discussion about setting a fire at 6043 South Aberdeen.

The trial court found both defendants guilty of arson. The court denied the post trial motions and sentenced each defendant to three years in prison.

Petitioner appealed his conviction to the Illinois Appellate Court, First District. Petitioner's case was first dismissed for failure to file a timely opening brief. The appeal was subsequently reinstated and was consolidated with that of his co-defendant, Craig Smith. On appeal, Petitioner raised the following issues:

1.  Petitioner was denied his right to a speedy trial and due process because the trial took place five years after his arrest;

2.  The indictment was invalid because it failed to state an offense;

3. Petitioner was denied either a fair trial or the effective assistance of counsel when the trial judge did not allow him to call a witness who had not been listed in discovery;

4. A prosecution witness was improperly allowed to testify as an expert regarding the cause of the fire involved;

5. Petitioner was not proven guilty beyond a reasonable doubt; and

6. The trial court erred when it allowed Petitioner, who was acting *pro se,* to question witnesses called by co-defendant Smith.

In an unpublished order issued on June 30, 1999, the Illinois Appellate Court, First District, affirmed the judgment of the trial court.

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court from the order of the Appellate Court. In that petition, Petitioner alleged that:

1. Petitioner was denied his right to a speedy trial and due process because the trial took place five years after his arrest;

2. The indictment was invalid because it failed to state an offense;

3. Petitioner was denied either a fair trial or the effective assistance of counsel when the trial judge did not allow him to call a witness who had not been listed in discovery;

4. A prosecution witness was improperly allowed to testify as an expert regarding the cause of the fire involved and the Appellate Court improperly found this issue to be waived; and

5. Petitioner was not proven guilty beyond a reasonable doubt.

The Illinois Supreme Court denied leave to appeal on October 6, 1999.

While his direct appeal was pending, Petitioner filed a petition for habeas corpus in the Circuit Court of Fayette, County, Illinois on May 4,1998. The trial judge dismissed this petition for lack of jurisdiction. The Judge held that, under the statute which governs Illinois habeas

corpus actions, an application for such relief must be made in the county in which a defendant was convicted or in the county in which the defendant is incarcerated. 735 ILCS 5/10-103. Petitioner had been convicted in Cook County and, at the time his petition was filed in Fayette County, Petitioner was incarcerated in Cook County.

Petitioner appealed the denial of his Fayette County habeas petition to the Illinois Appellate Court, Fifth District. The Appellate Court agreed with the lower court that the petition must be dismissed for lack of jurisdiction. The Appellate Court also held that the appeal was now moot because Petitioner had been released from incarceration and was then serving a term of supervised release. Thus, the Appellate Court affirmed the decision of the Fayette County Circuit Court. The Illinois Supreme Court denied leave to appeal from this order of the Appellate Court on October 6, 1999.

Petitioner also concurrently filed a petition for relief from judgment and for habeas corpus in the Circuit Court of Cook County. This petition was denied because Petitioner was not illegally imprisoned and because the other claims raised were then before the Appellate Court in Petitioner's direct appeal. On appeal from denial of that petition for state habeas corpus, Petitioner's appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), which stated that there were no appealable issues in the case. On June 18, 1999, the Appellate Court granted the motion to withdraw and affirmed the judgment of the Circuit Court. According to the records of the Clerk of the Illinois Supreme Court, Petitioner did not file a petition for leave to appeal from this order of the Appellate Court.

Petitioner subsequently filed a motion for leave to file a petition for habeas corpus in the Illinois Supreme Court. However, that motion and petition did not involve an attack on

10

Petitioner's conviction or sentence for arson. Those pleadings involved Petitioner's incarceration for a separate conviction. The Illinois Supreme Court denied the motion on August, 22, 2000.

Petitioner then filed the instant Petition for Writ of Habeas Corpus, which raises the following grounds:

(1)    Petitioner was denied a fair trial, equal protection and various other constitutional rights by the State's knowing use of the testimony of an arson expert who was allegedly not qualified to testify;

(2)    Petitioner was denied his right to due process, equal protection and full faith and credit when the State knowingly withheld from Petitioner exculpatory evidence regarding the allegedly unqualified arson expert and an occurrence witness;

(3)    Petitioner was denied his right to a speedy trial, due process and equal protection because he was tried seven years after the crime and five years after he was charged;

(4)    Petitioner was denied his right to due process and equal protection because he is actually innocent;

(5)    Petitioner was denied the effective assistance of counsel at trial when co-defendant's counsel failed to object to the testimony of the State's allegedly unqualified arson expert;

(6)    Petitioner was denied his right to be informed of the charge against him because there was a variance between the indictment and the charge of which he was convicted (Petitioner raises this same claim as Claim 6 and Claim 9 in his Petition);

(7)    Petitioner was denied his right to confront the witnesses against him because the value of the home burned was established through the report of an appraiser who did not testify at trial or at sentencing; and

(8)    Petitioner was denied the effective assistance of appellate counsel when counsel did not raise several specific claims on direct appeal.

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in

[state] custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2245(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v.*

*Illinois Dept. of Corrections,* 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can

grant habeas relief only when there is a violation of federal statutory or constitutional law.").

The federal courts may not grant habeas relief under Section 2254 unless the state court's

judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1)

exhaust all remedies available in state courts; and (2) fairly present any federal claims in state

court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir.

2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see*

*also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must

present his federal constitutional claims initially to the state courts in order to give the state 'the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"

*McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S.

364, 365 (1995)).

A petitioner has exhausted his state court remedies "by either (a) providing the highest

court in the state a fair opportunity to consider the constitutional issue, or (b) having no further

available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth,*

778 F.2d 1215, 1219 (7th Cir. 1985).

In this case, exhaustion is not an issue. Respondent concedes that Petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. We now turn to the issue of procedural default.

I. Procedural Default

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

In order for Petitioner to preserve claims for federal habeas review, he must provide the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Illinois, "one complete round" is finished once the petitioner has presented the habeas claims, whether on direct appeal or on post-conviction appeal, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48; *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999).

In this case, Respondent contends that Petitioner has procedurally defaulted on several of his claims. As set forth above, Petitioner brought a direct appeal and two state habeas corpus actions with regard to this case. He did not file a petition under the Illinois Post-Conviction

13

Hearing Act (725 ILCS 5/122-1, et seq). He did not file a petition for leave to appeal to the Illinois Supreme Court from the ruling of the Appellate Court which affirmed the denial of his Cook County habeas petition. Thus, under *Boerckel*, any issues which were presented only in that Cook County habeas petition are defaulted for purposes of federal habeas corpus.

Any issues presented only in Petitioner's Fayette County state habeas action also are not properly before this Court. The doctrine of procedural default bars federal habeas review when a petitioner has not met a state procedural requirement. If a default occurs, federal relief is barred because the default constitutes an independent and adequate state ground on which the decision rests. *Boerckel*, 135 F.3d at 1197. When a state court relies explicitly on a state procedural default rule in declining to review a federal question, a federal court sitting in habeas corpus jurisdiction must accept that ruling as an adequate and independent state ground for decision on the issue. *Hicks v. Chrans*, 894 F.2d 928, 934 (7th Cir. 1990). Here, the Appellate Court affirmed the dismissal of Petitioner's Fayette County petition based upon two procedural shortcomings. First, the petition was not filed in the county in which Petitioner was incarcerated or in which he had been convicted as required by Illinois Habeas Corpus Act. Further, the state court held that Petitioner's Fayette County Petition was moot. It is not our place to contradict these types of determinations. Thus, all issues raised only in the Fayette County habeas petition are defaulted.

Petitioner did file a petition for leave to appeal to Illinois Supreme Court after his direct appeal to the Illinois Appellate Court, which presented five of the claims included in the instant Petition. However, four of these claims are also defaulted.

We find that Petitioner's claim that the prosecution knowingly used the perjured testimony of an arson expert (First Claim) is defaulted. In the Appellate Court, Petitioner raised

14

the claim that the trial judge had improperly allowed the expert to testify in violation of an Illinois statute. At the Illinois Supreme Court, Petitioner argued that the Appellate Court erred by finding his substantive unqualified expert claim to be waived. In his Supreme Court brief, he uses the phrase "knowing use of perjured and impermissible expert testimony" for the first time. Therefore, although this claim was arguably raised in his petition for leave to appeal to the Supreme Court, it was not raised in the Illinois Appellate Court. In the Appellate Court, Petitioner raised only the issue that the expert testified in violation of an Illinois statute. He did not cite any federal cases or state cases applying constitutional analysis, "nor did he assert the claim in constitutional terms or allege facts within the mainstream of constitutional litigation." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). By changing the basis of his argument between the Appellate Court and the Supreme Court, Petitioner did not "fairly present" the issue of the prosecution's knowing use of perjured testimony regarding the arson expert to the state courts in the manner required by the state. A claim that is raised for the first time in a request for discretionary review by a state's highest court is not preserved for federal habeas review. *Castile*, 489 U.S. at 351.

Moreover, as mentioned above, when a state court relies on a state procedural default rule in declining to review a federal question, a federal court sitting in habeas corpus jurisdiction must accept that ruling as an adequate and independent state ground for decision of the issue. *Hicks*, 894 F.2d at 934 (7th Cir. 1990). The Illinois Appellate Court specifically found that Petitioner's claim regarding the qualifications of the arson expert was procedurally defaulted pursuant to well recognized principles of Illinois waiver law, and the Supreme Court affirmed the ruling on that basis. For these reasons, federal habeas review on this issue (Claim One) is barred.

15

Petitioner's claim that he was denied the ineffective assistance of counsel at trial because his co-defendant's counsel (Petitioner was operating *pro se)* wrongfully advised Petitioner that the expert in question was qualified (Claim Five) also was raised for the first time in Petitioner's direct appeal petition for leave to appeal to the Illinois Supreme Court. Thus, Petitioner's fifth claim is defaulted as well.

Petitioner's claims that he was improperly convicted of arson as defined by a different set of elements than the crime of arson for which he was indicted (Claim Six and Claim Nine) are also defaulted. In the State Appellate Court, Petitioner did not raise the same constitutional basis upon which he now founds his claim. In fact, he did not advance any constitutional basis for his claim in the Appellate Court. Rather, he claimed that the indictment was invalid pursuant to an Illinois statute. Petitioner did not there cite to any state or federal cases which applied a constitutional analysis or allege facts within the mainstream of constitutional litigation. Petitioner cited to one state case which also involved an analysis under the same Illinois statute invoked by Petitioner, *People v. Pettus*, 84 Ill.App.3d 390,405 N.E.2d 489 (4th Dist. 1980). The factual allegations were directed specifically at the statutory requirements. Therefore, the constitutional indictment issues raised in the federal habeas petition (Claims Six and Nine) are also defaulted. *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999).

A federal court may nonetheless address the merits of procedurally defaulted claims if the petitioner can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977). Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" under this test to be something

16

external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). In order to establish prejudice, the petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Petitioner has failed to establish cause and prejudice in his petition. Petitioner has failed to show any cause for his failure to raise these issues with the Illinois Appellate Court or the Illinois Supreme Court. He has not, for instance, alleged any interference by officials or the unavailability of the factual or legal basis of the claim. Petitioner has raised claims of the ineffective assistance of appellate counsel which, arguably, be used as the "cause" to excuse the default. But, in order to find that a habeas claim is not defaulted due to cause and prejudice, the ineffective assistance of counsel claim itself must not have been defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 1591-92 (2000). Here, Petitioner's claims of the ineffective assistance of appellate counsel were not among the claims fully and fairly presented to the state courts. Therefore, those claims have, themselves, been defaulted and cannot serve as cause for other defaults. Moreover, Petitioner has not shown prejudice because he has not shown that the alleged errors worked to his actual disadvantage and infected the entire trial with constitutional error.

Although Petitioner has failed to establish cause and prejudice to excuse his procedural default, he can still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson,* 267 F.3d 544, 551

(7th Cir. 2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). The miscarriage of justice exception applies only if the petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner has not specifically claimed a fundamental miscarriage of justice. However, in connection with one of his claims, Petitioner has alleged that he is actually innocent (Claim Four). In order to overcome a default using the fundamental miscarriage of justice exception, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him. *Rodriguez v. Scillia*, 193 F.3d at 917. This, Petitioner cannot do. As set forth in the Appellate Court order, the evidence was sufficient to convict Petitioner beyond a reasonable doubt.

A fire investigation expert testified that the fire in question originated inside a rear apartment of the building and was started by an open flame being applied to a flammable liquid that had been poured throughout the apartment. One of the former tenants, Victoria Jones, testified to several conversations she had with Petitioner's co-defendant, Craig Smith, in the months before the building was burned on December 24, 1991. In April of 1991, Smith told Jones that he had sold the building to Petitioner and that she and her roommate would probably have to move. A few days later Smith and Petitioner and spoke with Jones and the other tenants, again telling them that they had to move out. Petitioner told them that they had a certain time to move out and that he could help them locate another building. Smith stated that he had fire

18

insurance on the property. He told the tenants to obtain fire insurance and said that they "could make money together." In October of 1991, Smith and Petitioner again spoke with the tenants. Smith told them that they had to move out by December 20. He again spoke of fire insurance and told the tenants not to say anything if they saw something happening at the house next door. He again said that they could get fire insurance and make money together. Petitioner was present during these conversations. Smith also told Jones that the building was going to go up in flames. An insurance adjuster testified that the pre-fire value of the property was $31,000. Petitioner had insured the property for $70,000, had indicated a purchase price of $65,000 and had submitted a claim for $70,000. It would take about $53, 525 to repair the building to the condition it was in before the fire.

A neighbor testified that he walked by the building on the morning of December 24,1991 on his way to and from buying a newspaper. The neighbor saw Smith walk to the back of the building on the same side where the entrance to the back apartment is located. He later saw Smith leave the building from the back entrance and enter a van parked in the alley. Shortly thereafter, the neighbor saw flames coming from the back and side of the building. About ten minutes had passed since he saw Smith leave in the van. The parties stipulated that an expert in forensic chemistry would testify that samples taken from the back apartment were consistent with the presence of petroleum based products such as lantern fuels and automotive gasoline. Finally, the parties stipulated to the admission of various documents related to the property including a contract for the sale of the property from Smith to Petitioner for a purchase price of $35,000.

Thus, the evidence clearly shows that Petitioner and Smith conspired to burn the building in question and collect an inflated amount of compensation. It cannot be credibly argued that it is

more likely than not that no reasonable juror would have convicted Petitioner of arson based upon this evidence. Therefore, Petitioner's defaulted claims are not saved by the cause and prejudice exception or the actual innocence exception.

Accordingly, Claims One, Two, Four, Five, Six, Seven, Eight and Nine are barred from federal habeas review. The only claim which was submitted for one full round of state court review, and is therefore preserved for this Court's consideration, is Petitioner's claim that he was denied a speedy trial (Third Claim). Therefore, we will address the merits of this claim.

II. Merits of the Claim Properly Presented

Based on the discussion above, Petitioner has properly preserved one of the claims in his habeas petition. The preserved claim is Claim Three, Petitioner's claim that he was denied his constitutional right to a speedy trial. This claim was raised on direct appeal to the Illinois Appellate Court and again in a petition for leave to appeal to the Illinois Supreme Court. The provision in Title 28, United States Code, Section 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. Under that statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(2)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), attempted to clarify the applicable standard of review within the meaning of section 2254. The Court noted that the act does not explicitly prescribe a recognizable standard of review for applying either of the statutory

clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[the act] plainly sought to ensure a level of 'deference to the determinations of state courts,' as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Supreme Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, this Court is directed to apply a deferential review of the state court decision unless it is determined that the state court violated federal law.

Applying this standard to Claim Three of Petitioner's petition, we must deny it. Petitioner claims that he was denied his Sixth Amendment right to a speedy trial and due process. The Illinois Appellate Court addressed the issue under the applicable United States Supreme Court precedent. The Appellate Court dealt first with the Sixth Amendment claim. It listed the four factor test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and analyzed the facts of this case using those factors.

The Illinois Appellate Court first determined that since the delay in Petitioner's case was more than one year, that delay was presumptively prejudicial. The Court then weighed the other three factors pursuant to test enunciated in *Barker* and *United States v. Doggett*, 505 U.S. 647 (1992). The Court noted that a majority of the continuances were by mutual agreement, that some of the delays were caused by Petitioner's changes in counsel and that this was not a case in which the defendants aggressively asserted their right to a speedy trial or in which the State failed to pursue the matter. Accordingly, the Illinois Appellate Court determined that Petitioner's

constitutional rights to a speedy trial had not been violated.

Petitioner has presented no Supreme Court precedent which calls into question the Illinois Appellate Court's understanding and application of *Barker* and/or *Doggett*. Certainly, in light of those two cases, the Appellate Court's holding was not unreasonable or contrary to Supreme Court precedent.

The Appellate Court likewise addressed Petitioner's due process claim pursuant to Supreme Court precedent. Citing to its prior use of *United States v. Marion*, 404 U.S. 307, 323-24 (1971), the Court rejected Petitioner's claim because he had failed to show that the delay had caused substantial prejudice to his right to a fair trial or that the delay was an intentional device to gain a tactical advantage. Thus, the Appellate Court again used applicable Supreme Court precedent to analyze Petitioner's claim and Petitioner has presented no other Supreme Court precedent which calls the Appellate Court's ruling into question as being contrary to, or an unreasonable application of, Supreme Court precedent. Therefore, this Court denies habeas relief based upon Petitioner's speedy trial claims.

### CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for writ of habeas corpus brought by Petitioner Robert Ellis. This is a final and appealable order. This case is terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: *November 19, 2004*

22